Frances Arroyo
Los Angeles Legal Advocates
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd
Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE YURANI HORTUA<br><br>                    Petitioner,<br><br>vs.<br><br>CHRISTOPHER CHESTNUT, WARDEN OF CALIFORNIA CITY DETENTION CENTER;<br><br>DAVID MARIN, DIRECTOR OF LOS ANGELES FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;<br><br>KRISTI NOEM, SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; AND<br><br>PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES,<br><br>IN THEIR OFFICIAL CAPACITIES,<br><br>                    Respondents | PETITION FOR WRIT OF HABEAS CORPUS<br><br><br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief<br><br><br>**Case No. 1:25-at-01179** |

PETITION FOR WRIT OF HABEAS CORPUS

**INTRODUCTION**

1.   This petition challenges the unlawful re-detention of Petitioner Leslie Yurani Hortua, a 34-year-old survivor of gender-based and homophobic violence who has lived openly, peacefully, and fully compliant in the Bay Area for nearly three years after being affirmatively released by the Department of Homeland Security ("DHS"). After passing a credible-fear interview in 2023, receiving a Notice to Appear, and being placed into full removal proceedings, DHS released Petitioner on her own recognizance—necessarily finding that she posed no danger or flight risk. For the next thirty-one months, Petitioner built a stable life: she secured consistent employment as a nanny, developed deep community ties, pursued her asylum claim diligently, and complied flawlessly with every ICE check-in.

2.   On October 3, 2025, at what should have been a routine six-month check-in, ICE officers abruptly seized Petitioner without notice, explanation, or any claim of changed circumstances. DHS now asserts that she is subject to mandatory detention under 8 U.S.C. § 1225(b)—a border-processing statute that no longer applies to individuals whom DHS has released, placed in § 240 proceedings, and allowed to reside in the interior for years. This re-detention—after years of community presence and perfect compliance—inflicts severe harm, destabilizes her ongoing asylum case, exacerbates her documented traumatic brain injury, and violates both statutory and constitutional limits on immigration custody.

3.   The law is clear: once DHS releases a person following credible-fear screening and places her into § 240 proceedings, § 1225(b) detention authority is extinguished. Any subsequent custody must proceed, if at all, under 8 U.S.C. § 1226(a), which requires an individualized bond hearing before a neutral adjudicator. Courts across this Circuit have uniformly rejected DHS's recent attempts to resurrect § 1225(b) years after release, holding that such efforts contravene the INA, the Administrative Procedure Act, and the Due Process Clause.

4.   DHS also may not revoke conditional release absent (1) a material change in circumstances, supported by new evidence, and (2) notice and a pre-deprivation hearing. Here,

1    DHS does not claim—and cannot claim—any changed circumstance whatsoever. Petitioner's re-

2    detention was summary, unexplained, and untethered to any lawful statutory authority.

3        5.    Because Respondents' actions violate 8 U.S.C. § 1226, the APA, and the Fifth

4    Amendment, Petitioner respectfully seeks immediate release or, in the alternative, a prompt bond

5    hearing at which the government must justify continued detention by clear and convincing

6    evidence.

7    **JURISDICTION & VENUE**

8        6.    This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in custody under

9    the authority of the United States and seeks a writ of habeas corpus. This Court also has

10   jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, laws, and

11   treaties of the United States, and under 5 U.S.C. §§ 701–706 because Petitioner challenges

12   agency action that is arbitrary, capricious, and not in accordance with law.

13       7.    This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C.

14   §§ 2201–2202.

15       8.    Neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) bar this Court's review.

16       9.    Section 1252(b)(9) is a "zipper clause" that channels review of final orders of removal to

17   the courts of appeals; it does not apply where, as here, no final removal order exists and the

18   petitioner challenges only the statutory authority under which she is detained. *Reno v. Am.-Arab*

19   *Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999). As the Supreme Court explained in

20   *Jennings v. Rodriguez*, 583 U.S. 281 (2018), detention claims that raise "questions of law"—

21   including whether statutory provisions require detention without a bond hearing—do not "arise

22   from" removal proceedings and therefore fall outside § 1252(b)(9). Id. at 292–95. The Ninth

23   Circuit has repeatedly held that §§ 1252(a)(5) and (b)(9) do not preclude district-court review of

24   claims that are "independent of or collateral to the removal process," including challenges to

25   unlawful or prolonged immigration detention. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031–32 (9th

26   Cir. 2016); *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012). Every recent decision in

27   this district addressing the exact § 1225/§ 1226 misclassification issue has rejected the

28   PETITION FOR WRIT OF HABEAS CORPUS

government's § 1252(b)(9) argument for this same reason. See, e.g., *Monica Adriana Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at 5–7 (C.D. Cal. Oct. 31, 2025); *Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDX), 2025 WL 2986672, at 3–4 (C.D. Cal. Oct. 22, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMX), 2025 WL 2379285, at 1–2 (C.D. Cal. Aug. 15, 2025); *E.C. v. Noem*, No. 5:25-cv-02612-ODW (PDX), at *3 (C.D. Cal. Oct. 28, 2025); Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 884–85 (C.D. Cal. 2025).

10. Section 1252(g) likewise poses no bar. The Supreme Court has held that § 1252(g) applies only to three discrete discretionary actions—commencing proceedings, adjudicating cases, and executing removal orders—and does not cover legal challenges to the scope of DHS's detention authority. *Reno*, 525 U.S. at 482; *Jennings*, 583 U.S. at 294–96. Petitioner challenges none of those actions. Her claim is a "purely legal question" that does not implicate any exercise of prosecutorial discretion, and district courts retain jurisdiction over such claims. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004); *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025). Consistent with this binding authority, courts in this district have repeatedly held that § 1252(g) does not bar review of claims alleging detention under the wrong statutory provision. *Ruiz Yarleque*, 2025 WL 3043936, at *5–6; Garcia*, 2025 WL 2986672, at *3; Arrazola-Gonzalez*, 2025 WL 2379285, at *1; E.C.*, at *3. Accordingly, this Court has jurisdiction to hear and resolve this petition.

11. Venue is proper in the Central District of California because Petitioner is currently detained at the California City Detention Center—located within this District—at 22844 Virginia Blvd., California City, CA 93505. See *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (venue in habeas cases lies in the district of confinement).

### PARTIES

12. Petitioner LESLIE HORTUA is a 34-year-old citizen of Colombia who is currently detained at the California City Detention Center.

1    13. Respondent CHRISTOPHER CHESTNUT is the Warden of the California City Detention

2    Center, a CoreCivic-operated detention facility under contract with ICE. As the immediate

3    custodian with day-to-day control over Petitioner's physical detention, Warden Chestnut is the

4    proper respondent in this habeas corpus action. He is sued in his official capacity.

5    14. Respondent DAVID MARIN is the Director of the Los Angeles Field Office of U.S.

6    Immigration and Customs Enforcement ("ICE"). He exercises authority over the detention and

7    removal of noncitizens in the Los Angeles region, including Petitioner.

8    15. Respondent KRISTI NOEM is the Secretary of the U.S. Department of Homeland

9    Security ("DHS"), the federal agency responsible for immigration enforcement and detention.

10   She is sued in her official capacity.

11   16. Respondent PAM BONDI is the Attorney General of the United States and the head of

12   the U.S. Department of Justice, which oversees the Executive Office for Immigration Review

13   ("EOIR") and immigration judges. She is sued in her official capacity.

## FACTUAL BACKGROUND

14

15   17. Petitioner Leslie Yurani Hortua is a 34-year-old woman from Colombia who fled to the

16   United States after nearly a decade of escalating gender-based and homophobic violence.

17   Beginning in 2018, Petitioner was relentlessly targeted by the former partner of her girlfriend.

18   This former partner stalked her across cities, confronted her at her workplace, followed her

19   home, and repeatedly assaulted and threatened her. In one incident, he waited outside her

20   building with a motorcycle helmet and beat her while screaming that he would "kill [her] and cut

21   [her] into pieces." In another, he hurled a glass bottle at her as she ran from him. Petitioner

22   consistently returned home trembling and terrified, as described in sworn statements and

23   corroborating evidence submitted in her Form I-589 application.

24   18. Petitioner repeatedly sought help from Colombian police, but officers refused to take her

25   report and told her that this was "the kind of situation" she should expect because of her sexual

26   orientation. Over several years, Petitioner attempted to relocate—first to Fusagasugá, then to

27   Bogotá—but the harasser found her each time, continued stalking her, and renewed his threats.

28

PETITION FOR WRIT OF HABEAS CORPUS

After years of failed attempts to escape him, and with no protection from the Colombian state, Petitioner was forced to flee to save her life.

19. Petitioner entered the United States near Ciudad Juárez on or about March 12, 2023. She immediately expressed fear of return to Colombia and passed a credible-fear interview. DHS issued a Notice to Appear charging her under INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i). Petitioner was served on May 1, 2023, with oral notice in Spanish, and her case was routed to the San Francisco Immigration Court.

20. Following her release from initial custody, Petitioner relocated to the Bay Area, where she lived openly and continuously for nearly three years. She obtained stable employment as a nanny, providing daily care for a woman and her young daughter. The family relied heavily on Petitioner's support: she prepared meals, assisted with schoolwork, attended extracurricular activities, and helped maintain the household. Petitioner's presence provided stability in a home where the mother worked long hours, and the daughter came to see Petitioner as a central figure in her daily life.

21. Petitioner also built an extensive and affirming social network. She helped organize a women's skating group that became a supportive community space for dozens of women—many of whom had experienced their own trauma, displacement, or isolation. Petitioner helped coordinate meetups, taught new members how to skate safely, and created a sense of structure and community that group members describe as "life-changing." These relationships feature prominently in letters submitted with her bond packet and 589 materials.

22. In addition to her community contributions, Petitioner pursued her asylum claim diligently and in good faith. She timely filed her Form I-589, supplemented it with extensive documentation, and obtained multiple sworn statements from family and witnesses in Colombia. Her application includes country reports, psychological assessments, and corroborating evidence of the threats and assaults she experienced. Throughout her two years in the United States, she prepared for her asylum hearing, maintained communication with counsel, and demonstrated consistent investment in the legal process governing her protection claims.

23. In 2024, Petitioner was the victim of a separate violent assault in the United States. She was struck in the head with a rock, resulting in a traumatic brain injury (TBI). Medical documentation in the record notes ongoing symptoms, including heightened sensitivity to cold temperatures, disrupted sleep, chronic headaches, and increased anxiety under stress. These symptoms make her particularly vulnerable to the physical and psychological strains of confinement.

24. Despite trauma, unstable housing periods, and the lingering effects of her TBI, Petitioner complied flawlessly with immigration supervision. She attended every ICE check-in, every six months—never rescheduled, never absconded, always maintained an updated address, and remained in consistent communication with ICE officers and the immigration court. Her asylum case remains pending, and she has never missed a deadline or required enforcement action.

25. Petitioner's ties to the community are substantial and longstanding. Her cousin, Jennifer Mejia—who naturalized in May 2025—remains her closest family member in the United States. They speak daily, and Jennifer has consistently supported Petitioner through medical appointments, legal obligations, and day-to-day life. Petitioner's close friend, Karla Espinoza, has provided a sworn and notarized declaration committing to house Petitioner in San Jose, provide transportation to all hearings, and support ongoing stability. The family Petitioner lived with—and supported as a nanny—describe her as reliable, nurturing, and integral to their household. These ties demonstrate the depth of Petitioner's community integration and the stability she established during her two years of release.

26. On October 3, 2025, Petitioner appeared for a routine ICE check-in—the same type of appointment she had attended reliably for nearly three years. Without warning or explanation, ICE detained her and transferred her to the California City Detention Center, a remote, desert facility more than four hours from her home. Despite her request for custody redetermination following this arrest, the Immigration Judge declined to hold a bond hearing, stating that the court lacked jurisdiction because ICE classified Petitioner as an "applicant for admission" under INA § 235(b). As a result, she abruptly lost her employment, was separated from the family she

PETITION FOR WRIT OF HABEAS CORPUS

lived with and cared for, and was cut off from the skating group and the broader community network she helped build.

27. On November 20, 2025, Petitioner again sought a custody redetermination, and the Immigration Judge again denied jurisdiction—this time expressly relying on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The IJ concluded that, because Petitioner "entered without inspection or parole and has not been admitted," she must be treated as an "applicant for admission," and thus the court lacked authority to consider bond. *See* Exhibit C, Order of the Immigration Judge, Nov. 20, 2025. This continued misclassification deprived Petitioner of any opportunity for neutral review of her custody despite her two years of lawful release and perfect compliance.

28. Conditions in ICE custody have caused Petitioner severe physical and emotional strain. Detained individuals at the California City Detention Center have reported chronically cold temperatures, inadequate clothing and bedding, prolonged isolation, sanitation deficiencies, and significant barriers to medical care. [1]  Petitioner has experienced these same conditions, which directly exacerbate her TBI symptoms—worsening her headaches, sleep disruption, anxiety, and sensitivity to cold. Detention has disrupted her medical care, destabilized her asylum preparation, and inflicted harm far disproportionate to any legitimate purpose of civil immigration custody. The abruptness of her seizure—after years of full compliance—has devastated the stability she painstakingly built in the United States.

29. Today, Petitioner remains confined in a remote desert detention center, without access to the bond hearing the law promises and without any avenue to challenge the government's errors. ICE's misclassification has trapped her in a form of civil detention that no court has reviewed

---

[1] https://www.latimes.com/california/story/2025-11-13/immigrants-held-in-inhumane-conditions-at-california-detention-facility-sue-ice-dhs
https://www.theguardian.com/us-news/2025/nov/13/california-ice-detention-lawsuit

PETITION FOR WRIT OF HABEAS CORPUS

8

and that no statute authorizes. After nearly three years of peaceful community life, she now sits in custody with no process, no hearing, and no lawful justification for her detention.

**LEGAL FRAMEWORK**

**Petitioner's Custody is Governed By 8 U.S.C. § 1226, Not § 1225**

30. Federal immigration detention before a final order is governed by two separate statutory provisions, 8 U.S.C. §§ 1225 and 1226, which operate in "distinct and mutually exclusive spheres." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); *Martinez v. Clark*, 36 F.4th 1219, 1227–29 (9th Cir. 2022).

31. Section 1225 applies to "aliens seeking admission"—that is, those at the border or in initial expedited removal processing—and authorizes mandatory detention only during the limited period required for threshold inspection and credible fear review. *Jennings*, 583 U.S. at 303; *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109–10 (2020). It is a border-processing statute.

32. By contrast, § 1226 applies to individuals already inside the United States who are "pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a); *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Under § 1226(a), the government "may continue to detain" but also "may release" a person on bond or conditional parole, and long-standing regulations guarantee access to a bond hearing before a neutral adjudicator. *Jennings*, 583 U.S. at 306 ; 8 C.F.R. §§ 236.1(c)(8), (d)(1).

33. These schemes cannot overlap: an individual cannot simultaneously be detained as a mandatory arriving alien under § 1225 and a discretionary detainee under § 1226. *Martinez*, 36 F.4th at 1227–29 .

34. Recently, the Central District of California certified the Bond Eligible Class in *Maldonado Bautista v. Santacruz*, confirming that individuals who entered without inspection, were not apprehended at the border, and are not subject to §§ 1226(c), 1225(b)(1), or 1231 must be processed under § 1226, not § 1225. No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 25, 2025). The court held that DHS's contrary view—i.e., that § 1225(b)(2) authorizes mandatory detention

PETITION FOR WRIT OF HABEAS CORPUS
9

of this population—"runs counter to the plain language of the INA, foundational principles of statutory interpretation, and the INA's statutory scheme." *Id.* And the certified class expressly includes all such individuals "at the time DHS makes an initial custody determination," directly mirroring Petitioner's circumstances. *Id.* This persuasive, classwide ruling further confirms that Petitioner's custody is governed exclusively by § 1226.

35. Courts throughout this Circuit have held that once DHS affirmatively releases a person from initial § 1225(b) custody, the legal authority to detain under § 1225(b) is extinguished. *Pinchi v. Noem*, 2025 WL 2084921, at \*4–5 (N.D. Cal. July 24, 2025) ; *Espinoza v. Kaiser*, 2025 WL 2675785, at \*5–8 (E.D. Cal. Sept. 18, 2025) ; *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at \*8–10 (N.D. Cal. Sept. 12, 2025) ; *Hernandez v. Wofford*, 2025 WL 2420390, at \*12–15 (E.D. Cal. Aug. 21, 2025) .

36. Release ends § 1225 authority. It marks the statutory transition into § 1226(a), where detention is discretionary and tethered to individualized findings regarding flight risk or danger—and where a bond hearing is mandatory.

**Petitioner's Conditional Release Created a Constitutionally Protected Liberty Interest**

37. Release from immigration custody gives rise to a constitutionally protected liberty interest. The Supreme Court has repeatedly held that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Fifth Amendment. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As the Court explained in *Morrissey v. Brewer*, "[l]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 408 U.S. 471, 482 (1972). Once an individual is released from custody and allowed to resume the ordinary incidents of daily life, that liberty cannot be rescinded without due process of law.

38. The Supreme Court's conditional-liberty jurisprudence is unequivocal. In *Morrissey*, the Court held that a parolee—even one subject to ongoing supervision—has a protected liberty interest and must receive procedural safeguards before reincarceration. 408 U.S. at 482. In *Gagnon v. Scarpelli*, the Court extended these protections to probationers, holding that

PETITION FOR WRIT OF HABEAS CORPUS
10

revocation of conditional liberty requires a pre-deprivation hearing before a neutral decisionmaker. 411 U.S. 778, 781–82 (1973). And in *Young v. Harper*, the Court held that a pre-parole release program likewise "creates a liberty interest protected by the Due Process Clause," and that such liberty cannot be terminated without notice and a meaningful opportunity to be heard. 520 U.S. 143, 152 (1997).

39. Courts of appeals have consistently applied these principles in the immigration context. As the First Circuit explained, conditional immigration release "falls squarely within the scope of the liberty interests recognized in *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). The D.C. Circuit has concluded that "one free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017). And the Ninth Circuit, in the analogous context of mistaken-release cases, held that "once a prisoner is released, the liberty interest is triggered, and he cannot be returned to custody absent due process." *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982).

40. District courts in this Circuit have applied this settled law directly to post-release immigration re-detention. These courts hold that once DHS affirmatively releases an individual—whether on parole or on their own recognizance—the resulting conditional liberty interest prohibits the agency from re-detaining the person without procedural safeguards. See *Pinchi v. Noem*, No. 25-CV-5632, 2025 WL 2084921, at 4–5 (N.D. Cal. July 24, 2025) (once DHS released petitioner, any re-detention required a bond hearing under § 1226(a)); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *14 (E.D. Cal. Sept. 18, 2025)* (conditional release created a protected liberty interest; re-detention without a hearing violated due process); *Hernandez v. Wofford*, No. 1:25-CV-00986-KES-CDB (HC), 2025 WL 2420390, at 12–15 (E.D. Cal. Aug. 21, 2025) (rejecting DHS's attempt to revive § 1225(b) after release and holding that due process barred re-detention without procedural protections).

41. The due-process analysis is governed by *Mathews v. Eldridge*, which requires courts to evaluate three factors: (1) the private interest affected; (2) the risk of erroneous deprivation under

the procedures used, and the likely value of additional safeguards; and (3) the government's

interest, including the administrative burden of additional procedures. 424 U.S. 319, 335 (1976).

The Ninth Circuit applies this framework in liberty-revocation cases and has held that "adequate,

or due, process depends upon the nature of the interest affected. The more important the interest

and the greater the effect of its impairment, the greater the procedural safeguards" required.

*Haygood v. Younger*, 769 F.2d 1350, 1355–57 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408

U.S. at 481–82).

42. Under *Mathews*, a pre-deprivation hearing is required where, as here, the liberty interest

is significant, the risk of erroneous re-detention is high without neutral review, and the

government's interest is minimal in light of its prior determination that release was appropriate.

*Morrissey*, 408 U.S. at 482; *Gagnon*, 411 U.S. at 782; *Espinoza*, 2025 WL 2675785, at *14*;

*Pinchi*, 2025 WL 2084921, at *4–5. The weight of authority in this Circuit thus confirms that

DHS may not revoke conditional release and return a person to custody without notice, an

opportunity to be heard, and a neutral adjudicator.

**DHS Could Not Revoke Petitioner's Release Absent a Material Change in Circumstances**
**And a Pre-Deprivation Hearing**

43. DHS's authority to revoke release under § 1226(a) is not limitless. Although the

regulations state that ICE may "at any time" revoke a bond or order of recognizance,

longstanding BIA precedent makes clear that revocation is permissible only where there is a

material change in circumstances. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). There,

the Board explained that re-detention requires "new circumstances or information" not present at

the time of release, and that revocation is improper where the underlying facts remain

unchanged.

44. Federal courts have applied this rule strictly. In *Saravia v. Sessions*, the court held that the

government may not revoke release absent a genuine, material shift in the individual's danger or

flight-risk profile. 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd, 905 F.3d 1137 (9th Cir.

2018). The Ninth Circuit echoed this principle in *Panosyan v. Mayorkas*, explaining that "absent

PETITION FOR WRIT OF HABEAS CORPUS

changed circumstances … ICE cannot redetain." 854 F. App'x 787, 788 (9th Cir. 2021). A mere shift in ICE's internal preferences, a new supervisory officer, or a reevaluation of the same facts previously considered is insufficient; the change must be substantive and based on new, material information.

45. These statutory limitations are reinforced by the constitutional requirement of due process. The Supreme Court has long held that when the government confers conditional liberty—whether through parole, probation, or an analogous form of release—that liberty cannot be terminated without notice and a pre-deprivation hearing before a neutral decisionmaker. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). This principle applies with equal force in the immigration context. District courts across California have held that DHS must provide notice, articulate the basis for revocation, and afford a bond hearing before re-detaining a noncitizen who has been living in the community. See *Meza v. Bonnar*, 2018 WL 2554572, at 2–3 (N.D. Cal. June 4, 2018*)* (re-detention improper absent changed circumstances and hearing); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 971–73 (N.D. Cal. 2019) (ordering release where DHS failed to show new material facts); *Vargas v. Jennings*, 2020 WL 5074312, at 3 (N.D. Cal. Aug. 23, 2020) (same); *Romero v. Kaiser*, 2022 WL 1443250, at *3– 4 (N.D. Cal. May 6, 2022)* (requiring bond hearing following improper re-detention); *Enamorado v. Kaiser*, 2025 WL 1382859, at 3 (N.D. Cal. May 12, 2025) (release may not be revoked absent new evidence); *Doe v. Becerra*, 2025 WL 691664, at 4 (E.D. Cal. Mar. 3, 2025*)* (re-detention unlawful where DHS bypassed required § 1226(a) procedures).

46. Due process further requires that any custody determination consider alternatives to detention, since the purpose of civil immigration custody is to ensure appearance rather than to punish. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001); *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Once a noncitizen has been released under § 1226(a), the government must demonstrate—before a neutral adjudicator—that detention remains necessary and that no less restrictive alternative can achieve its goals.

47. Where § 1226(a) governs, re-detention may occur only after a bond hearing at which the government bears the burden to prove by clear and convincing evidence that the individual presents a danger or flight risk warranting detention. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018); *Diaz v. Garland*, 53 F.4th 1189, 1196–97 (9th Cir. 2022). Courts applying these principles to individuals who, like Petitioner, were previously released following credible fear proceedings have held that any subsequent custodial action must proceed through § 1226(a)'s bond process. See *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *8–10 (N.D. Cal. Sept. 12, 2025)* (release during early processing ends § 1225(b) applicability; re-detention requires § 1226(a) bond hearing).

48. Under both statutory and constitutional principles, DHS cannot revoke conditional release and re-detain a noncitizen unless (1) there is a material change in circumstances supported by new evidence, and (2) the individual receives notice and a pre-deprivation bond hearing at which the government satisfies its burden. When neither requirement is met, re-detention is unlawful.

**The Government Bears the Burden of Proof at Any Required § 1226(a) Custody Hearing**

49. Although § 1226(a) does not expressly allocate the burden at bond hearings—and the BIA has historically placed that burden on detainees, *see In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *In re Adeniji*, 22 I. & N. Dec. 1102 (BIA 1999)—courts within the Ninth Circuit have repeatedly held that once a detainee has been denied the individualized process the Constitution requires, due process—not agency practice—controls. *See Singh v. Barr*, 400 F. Supp. 3d 1005, 1018 (S.D. Cal. 2019).

50. Under the Fifth Amendment, the government must justify continued civil detention by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011); *Singh v. Barr*, 400 F. Supp. 3d at 1018; *Rajnish v. Jennings*, 2020 WL 7626414, at *4–5 (N.D. Cal. Dec. 22, 2020); *Hernandez v. Wofford*, 2025 WL 2420390, at *7–8 (E.D. Cal. Aug. 21, 2025). The Ninth Circuit's decision in *Rodriguez Diaz* acknowledged that *Singh* grounded this burden rule in "general principles of procedural due process," and expressly declined to decide

PETITION FOR WRIT OF HABEAS CORPUS
14

whether *Singh* "remains good law in any respect" after *Jennings*. 53 F.4th 1189, 1196, 1199, 1202 n.4 (9th Cir. 2022). Subsequent Ninth Circuit decisions have continued to apply the government-bears-the-burden rule in practice. *See Martinez v. Clark*, 36 F.4th 1219, 1231 (9th Cir. 2022) (noting BIA properly placed the burden on the government to prove danger by clear and convincing evidence for a § 1226(c) detainee), reaffirmed on remand, 124 F.4th 775, 785–86 (9th Cir. 2024).

51. District courts addressing § 1226(a), § 1225(b), and revocation cases regularly order that the government must justify detention by clear and convincing evidence before any re-detention. See *Hernandez v. Wofford*, 2025 WL 2420390, at *7–8 (E.D. Cal. Aug. 21, 2025) (requiring government to justify detention by clear and convincing evidence prior to any re-detention); *Pablo Sequen v. Albarran*, 2025 WL 2935630, at *1 (N.D. Cal. Oct. 15, 2025) (same); *Faizyan v. Casey*, 2025 WL 3208844, at *8 (S.D. Cal. Nov. 17, 2025) (same); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025) ("may not be detained unless the government demonstrates…by clear and convincing evidence…"); *Salazar v. Dedos*, 2025 WL 2676729, at *7–9 (D.N.M. Sept. 17, 2025); *Sadeqi v. LaRose*, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025).

52. In sum, where a noncitizen detained under § 1226(a) (or erroneously treated under § 1225(b)) has been denied the individualized custody process due process requires, the Constitution governs the remedial hearing: the government must prove, by clear and convincing evidence, that continued detention is necessary to prevent flight or protect the community. This allocation is essential to minimize the risk of erroneous deprivations of liberty and to give real effect to the Fifth Amendment's protections.

## CLAIMS FOR RELIEF

## COUNT ONE

### (*Unlawful Detention Under the Immigration and Nationality Act and the Administrative Procedure Act*)

53. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

54. Petitioner is currently detained in ICE custody. Respondents have treated her detention as "mandatory" and have refused to provide an individualized custody determination. To the extent Respondents contend that 8 U.S.C. § 1225(b) governs her detention, that position is contrary to statute, regulation, and binding precedent.

55. Section 1225(b) authorizes mandatory detention only during the narrow period of initial border inspection and credible-fear processing. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109–10 (2020).

56. Once DHS issues a Notice to Appear, places a noncitizen into § 240 proceedings, and affirmatively releases her, custody is governed exclusively by 8 U.S.C. § 1226(a), which authorizes release on bond or recognizance and guarantees an individualized custody hearing before a neutral adjudicator. *Jennings*, 583 U.S. at 306; *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

57. DHS released Petitioner following her credible-fear determination and placed her into § 240 proceedings, where she lived in the community for thirty-one months, maintained full compliance with supervision, and pursued her asylum case. Section 1225(b) therefore no longer supplies detention authority.

58. District courts across this Circuit have uniformly held that DHS's authority under § 1225(b) is extinguished once an individual is released, and that any later custody must proceed under § 1226(a). See *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *8–10 (N.D. Cal. Sept. 12, 2025); *Hernandez v. Wofford*, 2025 WL 2420390, at *12–15 (E.D. Cal. Aug. 21, 2025); *Espinoza v. Kaiser*, 2025 WL 2675785, at *5–8 (E.D. Cal. Sept. 18, 2025).

59. Petitioner is—and has been for nearly three years—in full § 240 removal proceedings before the San Francisco Immigration Court. Under the statutory scheme, detention authority for individuals in § 240 proceedings lies under § 1226(a), not § 1225(b). *Jennings*, 583 U.S. at 306; *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. at 520.

60. Respondents' continued reliance on § 1225(b) collapses the clear statutory line between §§ 1225 and 1226, contravenes controlling Ninth Circuit authority, and ignores DHS's own

regulations confirming that individuals in § 240 proceedings are "eligible for bond and bond redemption." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

61. Because DHS previously released Petitioner, placed her into § 240 proceedings, and permitted her to live under supervision for nearly three years, § 1225(b) no longer provides lawful detention authority. Respondents' refusal to provide a § 1226(a) bond hearing violates the Immigration and Nationality Act and the Administrative Procedure Act, 5 U.S.C. § 706(2).

## COUNT TWO

### (*Violation of Fifth Amendment's Due Process Clause*)

62. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

63. The Due Process Clause protects all persons in the United States from the deprivation of liberty without constitutionally adequate procedures. "Freedom from imprisonment" is the core liberty interest the Constitution safeguards. *Zadvydas v. Davis*, 533 U.S. 678, 690–93 (2001).

64. When DHS affirmatively releases a noncitizen—whether on parole, bond, or recognizance—that conditional liberty becomes a protected interest that may not be terminated without due process. See *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Young v. Harper*, 520 U.S. 143, 152 (1997). The Ninth Circuit similarly holds that a person living in the community "cannot be returned to custody absent due process." Johnson v. Williford, 682 F.2d 868, 873 (9th Cir. 1982).

65. Federal courts have repeatedly recognized that immigration release is analogous to other forms of conditional liberty and triggers the same due process protections. See *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *Romero v. Kaiser*, 2022 WL 1443250, at *2–3 (N.D. Cal. May 6, 2022); *Ortiz Vargas v. Jennings*, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020).

66. Courts across this Circuit have consistently held that DHS may not re-detain a noncitizen who was previously released into the community without notice, changed circumstances, and a hearing before a neutral adjudicator. See *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025

PETITION FOR WRIT OF HABEAS CORPUS

WL 2675785, at *5–8* (E.D. Cal. Sept. 18, 2025) (bond hearing required after release); *Pinchi v. Noem*, No. 25-CV-5632, 2025 WL 2084921, at *4–5* (N.D. Cal. July 24, 2025) (conditional release creates liberty interest; re-detention requires hearing); *Enamorado v. Kaiser*, No. 25-CV-04072-NW, 2025 WL 1382859, at *3* (N.D. Cal. May 12, 2025) (enjoining re-arrest absent showing of changed circumstances); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *4* (E.D. Cal. Mar. 3, 2025) (Constitution requires hearing before re-detention); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *3–4* (N.D. Cal. May 6, 2022) (improper re-detention absent notice and hearing); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *2* (N.D. Cal. Mar. 1, 2021) (enjoining re-detention without procedural safeguards); *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *3* (N.D. Cal. Aug. 23, 2020) (material change in circumstances required for re-detention); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 971–73 (N.D. Cal. 2019) (same); *Meza v. Bonnar*, No. 18-CV-02708, 2018 WL 2554572, at *2–3* (N.D. Cal. June 4, 2018) (re-detention unlawful without changed circumstances and hearing).

67. DHS re-detained Petitioner on October 3, 2025 without notice, without identifying any new information, and without providing a hearing. No materially changed circumstances existed: Petitioner had complied with all supervision obligations, maintained the same residence and employment, and continued to pursue her asylum case in good faith.

68. Under the *Mathews v. Eldridge* framework, all three factors confirm the constitutional violation. 424 U.S. 319, 335 (1976).

69. The private interest at stake is "the most elemental of liberty interests"—freedom from physical confinement. *Zadvydas*, 533 U.S. at 690. Petitioner had been living freely in the Bay Area for thirty-one months following DHS's own determination that she posed neither a flight risk nor a danger. During this period, she secured stable housing, maintained continuous employment as a caregiver, attended every ICE check-in, and developed extensive support networks, including the women's skating group she helped organize. She also continued to pursue her asylum claim in good faith. Re-detention abruptly extinguished this settled liberty,

PETITION FOR WRIT OF HABEAS CORPUS

18

separating her from the family she lived with, causing loss of employment, and severing her from the community ties DHS had repeatedly deemed compatible with release. This weighs heavily in favor of robust due process protections.

70. The <u>risk of erroneous deprivation</u> is substantial where, as here, DHS re-detains an individual without notice, without articulating any new factual basis, and without neutral adjudicatory review. Petitioner's circumstances had not meaningfully changed in the two years since DHS released her: she continued to comply fully with all reporting obligations, had no criminal convictions, remained address-stable, and pursued her asylum application as required.

71. The <u>government's interests</u> are minimal where, as here, DHS already determined that Petitioner was not a danger or a flight risk and affirmatively released her into the community. DHS's prior release decision—made after inspection, credible fear proceedings, and issuance of an NTA—necessarily reflects an individualized finding that detention was unnecessary. Nothing in the record suggests any material change since that determination. Petitioner lived in the Bay Area for nearly three years, complied with every ICE check-in, maintained stable housing and employment, pursued her asylum case, and has no criminal convictions. The government has no legitimate interest in re-detaining an individual who already demonstrated perfect compliance and stability under supervision.

72. Moreover, DHS has no valid interest in bypassing the statutory and constitutional procedures that govern custodial decisions. "The government has no legitimate interest in an erroneous deprivation of liberty." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Courts in this Circuit have repeatedly recognized that providing a § 1226(a) bond hearing is not an administrative burden but the ordinary process required by law. See *Pinchi v. Noem*, 2025 WL 2084921, at *4–5* (N.D. Cal. July 24, 2025); *Espinoza v. Kaiser*, 2025 WL 2675785, at *14* (E.D. Cal. Sept. 18, 2025); *Hernandez v. Wofford*, 2025 WL 2420390, at *12–15* (E.D. Cal. Aug. 21, 2025).

73. Less restrictive alternatives—including bond, supervised release, periodic check-ins, or electronic monitoring—were readily available and would have fully served any government

objective. The fiscal and administrative burden of providing a brief bond hearing is negligible compared to the profound deprivation of liberty at stake. As the Ninth Circuit has emphasized, when the government's burden is slight, due process requires additional safeguards. *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc). Immigration Judges conduct bond hearings as a matter of daily routine; the only additional step required here would have been to provide Petitioner the same ordinary process that § 1226(a) guarantees.

74. Because DHS previously determined Petitioner was suitable for release, because alternatives to detention were available, and because a bond hearing imposes virtually no administrative burden, the third *Mathews* factor overwhelmingly favors Petitioner.

## COUNT THREE

### (*Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)*)

75. Petitioner re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. The Administrative Procedure Act ("APA") provides that a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that are taken "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

77. DHS's decision to re-detain Petitioner on October 3, 2025—after nearly three years of release, compliance, employment, and community integration—while classifying her custody as mandatory under 8 U.S.C. § 1225(b), constitutes agency action that is arbitrary, capricious, and contrary to law.

78. As detailed above, DHS affirmatively released Petitioner in 2023 after concluding she posed neither a danger nor a flight risk. For over two years, she complied with every ICE check-in, maintained stable housing and employment, built extensive community ties, and pursued her asylum application in good faith. DHS's abrupt re-detention ignored its own prior assessment, failed to identify any changed circumstances, and offered no case-specific explanation for revoking her liberty.

79. Agency action is arbitrary and capricious when an agency "entirely fail[s] to consider an important aspect of the problem" or "offer[s] an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). DHS's re-detention of Petitioner—taken without any individualized reasoning, without acknowledging her record of compliance, and without articulating a lawful statutory basis— squarely meets this standard.

80. Courts have repeatedly held that DHS must provide a reasoned, individualized justification before revoking release or reclassifying a noncitizen as subject to mandatory detention. In *Y-Z-H-L v. Bostock*, No. 25-CV-493, 2025 WL 1898025, at *10–12* (D. Or. July 9, 2025), the court found a parole revocation unlawful where DHS failed to identify a cogent factual basis for detention. Similarly, in *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at 11 (W.D.N.Y. July 16, 2025), the court held that DHS must account for the specific reasons release was originally granted and may not revoke liberty without a grounded, individualized explanation. DHS provided no such explanation here.

81. DHS's actions also conflict with its own regulations and long-standing implementation of the INA. The IIRIRA implementing rules expressly recognize that noncitizens present in the United States and placed in § 240 proceedings "will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Until very recently, DHS consistently applied 8 U.S.C. § 1226(a) to individuals in Petitioner's circumstances—recent entrants who passed credible fear, were issued NTAs, and were released pending asylum proceedings. Its abrupt shift toward re-detaining such individuals under § 1225(b) disregards reliance interests and lacks the reasoned explanation that the APA demands.

82. Federal courts have enjoined similar attempts by DHS to expand § 1225(b) detention authority beyond its statutory limits. See *Coalition for Humane Immigrant Rights v. Noem*, No. 25-CV-872, 2025 WL 2192986, at *22–27* (D.D.C. Aug. 1, 2025) (holding that § 1225(b)(1)(A)(iii) "forbids the expedited removal of noncitizens who have been, at any point in time, paroled into the United States" and staying DHS directives that sought to circumvent

statutory structure); *Make the Road New York v. Noem*, No. 25-CV-190, 2025 WL 2494908, at *12–18, 23* (D.D.C. Aug. 29, 2025) (enjoining new DHS policies that risked subjecting individuals in § 240 proceedings to § 1225(b) mandatory detention).

83. By purporting to re-detain Petitioner under § 1225(b) after releasing her into the community, allowing her to live freely for over two years, and placing her into full removal proceedings under § 240, DHS acted "in excess of statutory jurisdiction" and "not in accordance with law." 5 U.S.C. § 706(2)(A), (C). Its re-detention decision is arbitrary and capricious because it ignores the agency's own prior findings, disregards established regulatory practice, and misapplies the statutory scheme Congress enacted.

84. In sum, DHS's decision to re-detain Petitioner under § 1225(b) is arbitrary, capricious, and contrary to law. The agency failed to acknowledge its prior release decision, failed to give a reasoned explanation for revoking her liberty, and acted beyond its statutory authority. Petitioner is therefore entitled to relief under the APA.

## PRAYER FOR RELIEF

85. WHEREFORE, Petitioner Leslie Yurani Hortua respectfully prays that this Court grant the following relief:

a. Assume jurisdiction over this matter pursuant to 28 U.S.C. § 2241 and the Administrative Procedure Act, 5 U.S.C. §§ 701–706;

b. Declare that Petitioner's detention under 8 U.S.C. § 1225(b) is unlawful because DHS previously released her, placed her into § 240 removal proceedings, and she is therefore properly subject to custody, if at all, under 8 U.S.C. § 1226(a);

c. Declare that DHS's re-detention of Petitioner—without changed circumstances, notice, or a bond hearing—violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Fifth Amendment's guarantee of due process;

d. Order the immediate release of Petitioner from immigration detention; or, in the alternative,

e.  Order that Petitioner be provided an individualized bond hearing before a neutral adjudicator within seven (7) days, at which the government must demonstrate, by clear and convincing evidence, that (1) Petitioner is a flight risk or a danger to the community, and (2) continued detention is the least restrictive means of ensuring her appearance at future proceedings and the safety of the community;

f.  Enjoin Respondents from re-arresting Petitioner unless and until such a hearing is held and the government meets that burden;

g.  Award reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

h.  Grant such further relief as this Court deems just and proper.

## <u>VERIFICATION PURSUANT TO 28 U.S.C. 2242</u>

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

DATED: November 2, 2025

Respectfully Submitted,

_____

Frances Arroyo #276747
Los Angeles Legal Advocates
farroyo@lalegaladvocates.com
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd

PETITION FOR WRIT OF HABEAS CORPUS
23

Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com

## **EXHIBIT LIST**

**Exhibit A:** Filed Bond Packet

**Exhibit B:** Notice to Appear (issued 2023)

**Exhibit C:** November 20, 2025 Immigration Judge Bond Denial (Order finding no jurisdiction under *Matter of Yajure Hurtado*)

**Exhibit D:** Form I-589 Application for Asylum and Withholding of Removal (filed March 13, 2024)