1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   LESLIE YURANI HORTUA,

12              Petitioner,                        No. 1:25-cv-01670-TLN-JDP

13

14        v.                                       **ORDER**

15   CHRISTOPHER CHESTNUT, et al,

16              Respondents.

17

18          This matter is before the Court on Petitioner Leslie Yurani Hortua's ("Petitioner") Motion

19   for a Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction.[1]  (ECF No.

20   3.)  Respondents Christopher Chestnut, David Marin, Pam Bondi, and Kristi Noem (collectively,

21   "Respondents") filed an opposition.[2]  (ECF No. 7.)  Petitioner filed a reply.  (ECF No. 8.)  The

22

23   [1]        Respondents oppose the Court addressing Plaintiff's motion as one for a preliminary
     injunction.  (ECF No. 7 at 2 n.2.)  Therefore, the Court considers the motion as one for a
24   temporary restraining order only.

25   [2]        In a footnote, Respondents seek to "strike and dismiss all unlawfully named officials
     under § 2241."  (ECF No. 7 at 1 n.1.)  The request, as made, is improper.  If Respondents seek to
26   dismiss other respondents from this action, they must do so in a properly noticed motion.  *See*
     *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025)
27   ("[A] request for court order must be made by motion.  As a result, a request for affirmative relief
     is not proper when raised for the first time in an opposition.").
28

                                                   1

1   parties indicated no objection to the Court's consideration of Petitioner's motion on the briefing,

2   without oral argument.  (ECF No. 7 at 11; ECF No. 8 at 5.)  For the reasons set forth below,

3   Petitioner's request for a temporary restraining order is GRANTED.

4              I.    FACTUAL AND PROCEDURAL BACKGROUND

5          Petitioner is a native and citizen of Colombia who entered the United States on March 12,

6   2023.  (ECF No. 3 at 4.)  Petitioner was provided a credible fear interview, and the immigration

7   officer found Petitioner has a credible fear of persecution.  (ECF No. 7-1 at 2.)  On April 4, 2023,

8   Petitioner was released from immigration detention on parole.  (*Id.*)  On December 9, 2024,

9   Petitioner was arrested for theft, which was resolved with community service and did not result in

10  a conviction.  (ECF No. 3 at 5.)  On October 3, 2025, Petitioner was detained without notice at a

11  routine six-month check in with Immigration and Customs Enforcement ("ICE").  (*Id.* at 6.)

12         On November 28, 2025, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)

13  The same day, Petitioner filed a motion for a TRO and for a preliminary injunction.  (ECF No. 3.)

14             II.   STANDARD OF LAW

15         A TRO and a preliminary injunction are both extraordinary remedies.  In general,

16  "[t]emporary restraining orders are governed by the same standard applicable to preliminary

17  injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1

18  (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

19         For both a TRO and a preliminary injunction, courts consider whether Petitioner has

20  established: " [1] that he is likely to succeed on the merits, [2] that he is likely to suffer

21  irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

22  favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*,

23  555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.

24  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  In evaluating a

25  petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements

26  using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may

27  support issuing a TRO even where the petitioner shows that there are "serious questions on the

28  merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and

1    that the injunction is in the public interest." *Id.*  Simply put, Petitioner must demonstrate, "that

2    [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ]

3    sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

4        **III.    ANALYSIS**

5            The Court considers each of the *Winter* elements with respect to Petitioner's Motion.

6                    A.        Likelihood of Success on the Merits

7            Petitioner argues she is likely to succeed on her claim that the Department of Homeland

8    Security ("DHS") violated the Fifth Amendment when it redetained her on October 3, 2025,

9    without notice, without an opportunity to be heard, and without any assertion of changed

10    circumstances indicating danger or flight risk.  (ECF No. 3 at 10.)  Petitioner contends the

11    Constitution does not permit ICE to redetain a person who has lived at liberty for more than two

12    years, complied with all supervision obligations, and built deep community ties, absent a pre-

13    deprivation hearing before a neutral adjudicator, where the government bears the burden to show

14    that circumstances have materially changed.  (*Id.*)  Petitioner further contends 8 U.S.C. § 1226(b)

15    ("§ 1226") — which permits DHS to revoke a prior release — is limited and the Government may

16    only revoke release when there has been a material change in circumstances.  (*Id.*)

17            In opposition, Respondents contend Petitioner is detained pursuant to 8 U.S.C. §

18    1225(b)(1)(b)(ii) ("§ 1225"), which mandates Petitioner's detention.  (ECF No. 7 at 6.)

19    Respondents further contend, because Petitioner is currently detained under this statute, she is

20    ineligible for release, parole, or a custody redetermination hearing.  (*Id.*)  Respondents argue

21    noncitizens subject to removal cannot assert a liberty interest in additional procedures not

22    provided by the statute, § 1225.

23            The Fifth Amendment Due Process Clause prohibits government deprivation of an

24    individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d

25    976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

26    the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)

27    ("[T]he Due Process Clause applies to all 'persons' within the United States, including

28    noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These

3

1    due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at

2    693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

3        Courts examine procedural due process claims in two steps: the first asks whether there

4    exists a protected liberty interest under the Due Process Clause, and the second examines the

5    procedures necessary to ensure any deprivation of that protected liberty interest accords with the

6    Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

7    *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

8    the question remains what process is due.").  The Court considers each step in turn.

9                    i.        *Liberty Interest*

10       "Freedom from imprisonment—from government custody, detention, or other forms of

11   physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects."

12   *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or

13   over whose liberty the government wields significant discretion retain a protected interest in their

14   liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).  "Although in

15   some circumstances the initial decision to detain or release an individual may be within the

16   government's discretion, the government's decision to release an individual from custody creates

17   'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only

18   if [they] fail[ ] to live up to the . . . conditions [of release]."  *Id.* (quoting *Morrissey*, 408 U.S. at

19   482) (modifications in original).  "Accordingly, a noncitizen release from custody pending

20   immigration proceedings has a protected liberty interest in remaining out of custody."  *Salcedo*

21   *Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12,

22   2025).  To determine whether an individual's conditional release rises to the level of a protected

23   liberty interest, courts have "compar[ed] the specific conditional release in the case before them

24   with the liberty interest in parole as characterized by *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-

25   cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025) ("*R.D.T.M. I*").

26       As a preliminary matter, the Court finds Respondents' argument — that Petitioner cannot

27   assert a liberty interest because she is an "applicant for admission" under § 1225 and therefore

28   subject to mandatory detention, ineligible for release, parole, or a custody redetermination hearing

1  — unpersuasive.

2       Courts have concluded "[f]or [§1225] to apply, several conditions must be met — in

3  particular, an 'examining immigration officer' must determine that the individual is: (1) an

4  'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt

5  entitled to be admitted." *Martinez v. Hyde*, No. CV 25-11613- BEM, 2025 WL 2084238, at *2

6  (D. Mass. July 24, 2025).

7       First, there is no evidence in the record that an immigration officer made the requisite

8  determinations for § 1225 to apply or that Petitioner is seeking admission and not clearly and

9  beyond a doubt entitled to be admitted.  Following and adopting the reasoning of other courts,

10  this Court finds Petitioner is not actively seeking lawful entry because she already entered the

11  United States over two years ago.  *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases

12  concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not

13  include noncitizens like Petitioner, living in the interior of the country.).

14       Further, Respondents' proposed interpretation of the statute disregards the relationship

15  between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous.

16  *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept.

17  23, 2025).  Specifically, and as many courts have discussed in length, if every "applicant for

18  admission" is subject to mandatory detention under § 1225, there would have been no need for §

19  1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United

20  States without being admitted or paroled" and who has been "charged with, arrested for, or admits

21  to" committing certain crimes.  8 U.S.C. § 1226(c)(1)(E); *Maldonado v. Olson*, No. 25-CV-3142

22  (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that

23  Congress passed the Laken Riley Act to 'perform the same work' that was already covered by §

24  1225(b)(2).").

25       Finally, Respondents acknowledge "until recently, the Government interpreted § 1226(a)

26  to be an available detention authority for [noncitizens] present without being admitted or paroled

27  placed directly in full removal proceedings under § [1229(a)]."  The Government's new

28  interpretation of §§ 1225 and 1226 is inconsistent with decades of prior statutory interpretation

1    and practice.  *Lepe*, 2025 WL 2716910, at *4 (collecting cases).  The Court finds that the

2    Government's former practice of applying § 1226(a) to petitioners in similar circumstances is

3    consistent with the text and statutory scheme.

4           As to whether there exists a protected liberty interest, the Court finds Petitioner has a

5    liberty interest as she has developed "enduring attachments of normal life" as described in

6    *Morrissey*, 409 U.S. at 482.  In the two years following her release, Petitioner has established a

7    life in California, providing daily childcare as a nanny for a family that depends on her.  (ECF

8    No. 3 at 15.)  She has become involved with her local community, participating in a women's

9    skating group.  (*Id.*)

10          Moreover, Petitioner was released from immigration detention on parole, which created a

11   reasonable expectation that she would be entitled to retain her liberty absent a material change in

12   circumstances.  Petitioner's detention goes against United States Supreme Court precedent which

13   recognizes that individuals who have been released from custody, even where such release is

14   conditional, have a liberty interest in their continued release.  *Morrissey*, 408 U.S. 471 at 482.

15          Given this, the Court finds Petitioner has established a strong likelihood of success in

16   showing that she has a liberty interest.

17                          *ii.*          *Procedural Due Process*

18          Having found a protected liberty interest, the Court examines what process is necessary to

19   ensure any deprivation of that protected liberty interest accords with the Constitution.  To

20   determine such, the Court considers three factors: (1) "the private interest that will be affected by

21   the official action;" (2) "the risk of an erroneous deprivation of such interest through the

22   procedures used, and the probable value, if any, of additional or substitute procedural

23   safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

24   and administrative burdens that the additional or substitute procedural requirement would entail."

25   *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

26          Petitioner argues the Constitution does not permit ICE to redetain a person who has lived

27   at liberty for more than two years, complied with all supervision obligations and built deep

28   community ties, absent a pre-deprivation hearing before a neutral adjudicator, where the

1    Government bears the clear and convincing burden to show a change in material circumstances.

2    (ECF No. 3 at 10.)

3          As to Petitioner's private interest, she contends under *Morrissey*, individuals conditionally

4    released from serving a criminal sentence have a liberty interest that is "valuable," and argues that

5    principle applies with even greater force to individuals like her, who have been released pending

6    civil removal proceedings.  (*Id.* at (citing *Morrissey*, 408 U.S. at 482).)

7          Petitioner further argues Respondents' interest, in contrast, is low and does not outweigh

8    her private interests.  (*Id.* at 17–18.)  Specifically, Petitioner contends providing her with a bond

9    hearing is not burdensome as it is a routine mechanism Congress established under § 1226(a), and

10   immigration courts conduct such hearings every day.  (*Id.* at 18.)

11         As to erroneous deprivation, Petitioner contends DHS abruptly seized her at a routine

12   check-in and reclassified her as subject to mandatory § 1225(b) custody — without articulating

13   any factual basis or pointing to any new evidence.  (*Id.* at 16.)  Petitioner contends multiple courts

14   have held that such a misclassification creates a "systemic risk of erroneous deprivation" because

15   it bypasses the individualized custody process Congress prescribed in § 1226.  (*Id.*)

16         In opposition, Respondents argue noncitizens subject to removal, like Petitioner, who

17   were not admitted or paroled in the country, lack any liberty interest in avoiding removal or to

18   certain procedures.  (ECF No. 7 at 9.)

19         The Court agrees with Petitioner.  As to the first *Mathews* factor — Petitioner's private

20   interest — Petitioner was out of custody for two years prior to her redetention.  (ECF No. 3 at 5.)

21   During those two years, Petitioner was gainfully employed as a nanny, providing daily care to a

22   young child whose family relied heavily on her support.  (*Id.*)  The length of time and the

23   connections Petitioner made with her community during that time create a powerful interest for

24   Petitioner in her continued liberty.  *See Doe v Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL

25   69166, at *5 (E.D. Cal. March 3, 2025).

26         As to the second *Mathews* factor, the Court finds the risk of erroneous deprivation is high

27   where, as here, Petitioner has not received a bond or custody redetermination hearing.  *A.E. v.*

28   *Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  As

1  there have been no procedural safeguards to determine if Petitioner's redetention is justified, the

2  value of a hearing is high.  *Id.*

3         As to final *Mathews* factor, the Court finds the Respondents' interest in placing Petitioner

4  in detention without a hearing is low.  The effort and cost required to provide Petitioner with

5  procedural safeguards is minimal.  Thus, Respondents' burden does not outweigh Petitioner's

6  substantial liberty interest and risk of erroneous deprivation.

7         Having found Petitioner has a liberty interest and determined that due process requires

8  Petitioner receive a hearing to determine whether detention is warranted, the Court finds that

9  Petitioner has established a likelihood of success on the merits.

10              B.      Irreparable Harm

11        Petitioner argues she will suffer irreparable harm were she to remain deprived of her

12  liberty and subjected to continued incarceration.  (ECF No. 3 at 21.)  Specifically, Petitioner

13  contends, she is being detained under the wrong statute, has been denied the procedures Congress

14  provided under § 1226, and has been deprived of a hearing, despite more than two years of

15  perfect compliance with the conditions of her release.  (*Id.* at 22.)  Petitioner also contends she

16  faces serious and concrete harms independent of the constitutional injury, including: deterioration

17  of her medical conditions caused by detention; destabilization of her life; inability to pursue her

18  pending asylum claim; and psychological harm.  (*Id.* at 22–23.)

19        In opposition, Respondents argue immigration detention, economic burdens, and inability

20  to pursue an asylum claim are harms inherent in detention and therefore, the Court cannot weigh

21  this strongly in favor of Petitioner.  (ECF No. 7 at 9.)

22        The Court finds Petitioner will suffer irreparable harm in the absence of preliminary

23  injunctive relief.  Prior to her redetention, Petitioner had been out of custody for two years, during

24  which time Petitioner appears to have made meaningful connections with her community.

25  Despite being released on parole, Petitioner was redetained without the opportunity to be heard by

26  a neutral adjudicator on whether redetention is warranted.  This violation of Petitioner's due

27  process rights is sufficient to satisfy the irreparable harm requirement.  *Doe v. Becerra*, No. 2:25-

28  CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025).

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

The Court finds the balance of equities and public interest weighs in Petitioner's favor given that the Court has found that Petitioner has a strong likelihood of success on the merits and Respondent's lack of irreparable harm. *Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The Government] cannot suffer harm from an injunction that merely ends an unlawful practice . . . ").

Therefore, the Court GRANTS Petitioner's motion for a temporary restraining order. (ECF No. 3.)

**IV.    CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Petitioner's Motion for a Temporary Restraining Order (ECF No. 3) is GRANTED.

2.  Respondents must IMMEDIATELY RELEASE Petitioner Leslie Yurani Hortua from custody under the same conditions as she was released previously, prior to her October 3, 2025, detention.  Respondents shall not impose any additional restrictions on her, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3.  Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

4.  Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a

1  preliminary injunction continuing this order.  Respondents shall file responsive papers by

2  **Friday, December 12, 2025**.  Petitioner may file a reply, if any, by **Tuesday, December**

3  **16, 2025**.  The parties shall indicate in their briefing whether they waive hearing.  Fed. R.

4  Civ. P. 65(b)(3).  In the meantime, a hearing is scheduled for **Wednesday, December 17**

5  **at 10:30 a.m.** in Courtroom 2.  The Court will consider any stipulation and proposed

6  order filed by the parties if they agree to a less demanding briefing schedule.

7  5.  Respondents are hereby notified of their right to apply to the Court for modification or

8  dissolution of the Temporary Restraining Order on two days' notice or such shorter notice

9  as the Court may allow.  Fed. R. Civ. P. 65(b)(4).

10  6.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

11  regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015

12  (9th Cir. 2011).

13  IT IS SO ORDERED.

14  Date: December 9, 2025

15  _____

16  TROY L. NUNLEY
   CHIEF UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28